IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARC NORFLEET,                          )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   Case No.   15-cv-160-JPG-SCW
                                        )
DONALD GAETZ, PATRICK KEANE,            )
THOMAS SPILLER, IDOC, WILSON,           )
CHRISTINE BROWN, and MICHAEL            )
EDWARDS,                                )
                                        )
        Defendants.

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12132) ("ADA") and the Rehabilitation Act (29 U.S.C. § 705(2)(B)) ("RA"), *pro se* Plaintiff Marc Norfleet, currently incarcerated at Pinckneyville Correctional Center, filed this complaint alleging that Defendants retaliated against him and violated his rights under the ADA, RA, and eighth amendment by refusing to provide him with access to exercise/recreational equipment. This matter is before the Court on Plaintiff's motion for preliminary injunction (Doc. 51). Defendants have filed a response (Doc. 52) in opposition to the motion. This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule

72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's motion for preliminary injunction.

### FINDINGS OF FACT

### A. Procedural Background

On February 12, 2015, Plaintiff filed his complaint against various individuals for violations of the ADA, RA, and his eighth amendment rights (Doc. 1).  Specifically, Plaintiff suffers from a severe back impairment and radiculopathy (a disease of the nerve roots and compression of the spine) that has left him confined to a wheelchair (Doc. 17, p. 4).  Plaintiff alleges that the Defendants have engaged in a continuous pattern of denying him accommodations for his medical condition, specifically access to exercise equipment that accommodations his condition (*Id.*).  Plaintiff previously filed a case while at Menard Correctional Center indicating that the prison could not accommodate his needs to exercise with his disability and the defendants in that case, specifically Menard warden Kimberly Butler, indicated that Plaintiff would be transferred to Pinckneyville which was ADA and RA compliant (*Id.*; ***Norfleet v. Benton, et al.*, Case No. 09-cv-347-JPG-PMF (S.D. Ill., filed May 6, 2009, dismissed March 22, 2013**.).  However, Plaintiff's complaint alleges that Pinckneyville is not, in fact, complaint.  Thus, since his transfer to Pinckneyville, Plaintiff has been denied access to facilities and exercise equipment that would allow him to have proper exercise with his disability (*Id.* at pp. 4-5).

Plaintiff's complaint alleges that prior to his transfer to Pinckneyville, Defendant

Keane, the ADA compliance officer for IDOC, instructed ADA coordinators at all IDOC facilities that they are not required to make disability accommodations to allow Plaintiff access to meaningful exercise (Doc. 17, p. 5). Plaintiff claims that this was done in retaliation for Plaintiff filing the earlier lawsuit about the lack of ADA and RA compliant exercise. Plaintiff further alleges that when he first transferred to Pinckneyville, he was not given access to the gym and that the gym was not ADA compliant (*Id.* at p. 5). Plaintiff filed a grievance with Defendant Wilson, Pinckneyville's ADA coordinator, and Plaintiff was told that he had access to recreation through his access to the yard which is offered for seven hours each week and that he can access to the ADA gym once a week (*Id.*). However, in March 2013, Plaintiff complained that he did not have access to the pull-up-dip bars, wheelchair exercise track, exercise machines, handball court, or the basketball court because moving in and out of his wheelchair aggravated a prior medical condition and because he was not provided with a sports wheelchair (*Id.* at p. 5-6). Plaintiff was denied access to a sports wheelchair because his wheelchair met ADA standards and he was told that he had sufficient access to recreation.

In September 2013, Plaintiff alleges that he submitted request slips to the warden because he was unable to access the reopened wheelchair cardio track due to the condition of the track (Doc. 17, p. 6). Plaintiff alleged that it was full of chunky dirt and mire. He also complained that he did not have padded gloves, which he had previously had access to, and needed a sport wheelchair (*Id.*). These requests were denied. Through 2014, Plaintiff continued to complain that he did not have adequate

access to disabled-accessible exercise equipment (*Id.*). Plaintiff alleged that he was unable to use the pull-up bar because of a shoulder condition and his requests for free weights as an alternative to a pull-up bar were denied. He also still did not have padded gloves which caused him to develop blisters.

Plaintiff's complaint sought a preliminary injunction ordering the Defendants to comply with the ADA and RA by providing him access to meaningful exercise and an exercise schedule that is equal to that of non-disabled inmates. He specifically demanded free weights, that the wheelchair cardio track be repaired, and that he be provided with padded gloves.

On November 6, 2015, Plaintiff also filed a motion for preliminary injunction (Doc. 51). Plaintiff reiterated the requests in his complaint, specifically requesting access to weight barring and cardio exercise. Defendants oppose the motion (Doc. 52), arguing that Plaintiff has not shown any of the elements required for a preliminary injunction.

### B. Evidentiary Hearing

On March 10, 2016, the Court held a hearing on Plaintiff's motion for preliminary injunction. The Court only took testimony from Plaintiff as witnesses for the Defendants were unavailable. The matter was continued in order to obtain witness testimony for the Defendants. At the initial hearing, Plaintiff testified as to his current physical condition and his circumstances regarding his ability to exercise.

Plaintiff testified that he wants reasonable and meaningful access to exercise

equipment. Plaintiff testified that he has been able to go to the gym once a week on an ADA gym pass, although he testified that he has not received a pass since returning to Pinckneyville from a writ in January 2016. Plaintiff testified that while he is able to go to the gym, he cannot access the machines in the gym because he cannot easily transfer from his chair to the machines. He is able to transfer to one machine, but transferring back to his chair is extremely painful and once he completes the transfer is not able to transfer to another machine because he is in too much pain. Plaintiff testified that other machines are not accessible at all because they are too close together or are situated in the room in such a way where he is unable to maneuver his wheelchair close enough to the machine to transfer to the machine.

While Plaintiff cannot easily access the machines due to his wheelchair or is in too much pain to transfer to the machine from his wheelchair, Plaintiff testified that even if he is able to transfer to the machine he is unable to perform the movements of the machine due to pain and an injury with his shoulders. Plaintiff indicated that he is not able to move his arms above his head or move his elbows backwards due to pain in his shoulders. Plaintiff demonstrated to the Court that he could not move his arms in such a way as to perform the movements on a pectoral fly machine, the only machine Plaintiff testified he is able to access with his wheelchair, nor is he able to perform the motions required for a shoulder or chest press. Plaintiff believes that his inability to perform these movements is due to a lactic acid buildup in his shoulders which he believes was caused by lack of consistent exercise. He also believes that he has arthritis in his joints

which makes the movements painful. Plaintiff demonstrated to the Court that he is unable to perform the motions without weights and thus could not perform them even if he did have access to weights.

Plaintiff testified that when he first arrived at Pinckneyville, in 2012, he was given six months of physical therapy for the range of motion issues with his shoulders. Plaintiff met with the therapist once a week and she helped him with range of motion exercises including shoulder rotations, lateral arm raises, and forward arm raises with the use of a bungee cable. Plaintiff testified that although he believes he gained some limited range of motion in his left arm, the therapy was ultimately unsuccessful. The therapy was not renewed after the six month period as the therapist indicated that Plaintiff showed no improvement from the therapy. Plaintiff asked that the therapy be renewed on two occasions but those requests were denied.

Plaintiff requests meaningful access to exercise, but he cannot utilize any of the equipment in the gym as he is unable to perform the movements. He testified that the prison would not let him have the bungee cables that he used in therapy either. In light of the fact that Plaintiff cannot utilize any of the machines in the gym due to the limitations with his shoulders, Plaintiff requests free weights. While Plaintiff cannot perform the movements with free weights either (in fact he testified that doing the shoulder rotations without weights causes his shoulders to click, swell, and is painful), Plaintiff testified that he can swing the weights down at his side, which he believes will help get his heart rate up and which will loosen up his shoulders. Plaintiff

acknowledges that no medical personnel ever told him that such a movement will achieve the results he seeks. He believes the movements will increase his heart rate and prevent him from getting a heart attack.

On cross examination, Plaintiff acknowledged that he does have access to the outside yard and that Pinckneyville has an ADA compliant track, although Plaintiff testified that only three-fourths of the track is accessible. Plaintiff acknowledged that he pushes himself around the track for a cardio exercise but that is not enough. Plaintiff testified that he needs weight bearing, cardio exercises, and he believes swinging dumb bells down at his sides will meet that criteria.

### C. Second Evidentiary Hearing

The Court reconvened the evidentiary hearing on April 15, 2016. At that hearing, Defendants called Christine Brown, Healthcare Unit Administrator at Pinckneyville Correctional Center where Plaintiff is housed. Brown testified that she reviewed Plaintiff's physical therapy records and that he received physical therapy starting on July 2, 2012 and completed physical therapy in February 2013.

Plaintiff offered rebuttal testimony, indicating that since the last hearing on his motion he continues to suffer physical issues including constipation, sluggishness, numbness in his arms, headaches, and has trouble getting dressed and washing his back in the shower. Plaintiff also testified that he wanted to be transferred to Big Muddy Correctional Center or another facility which has access to free weights for disabled inmates.

### D. Medical Records

In addition to offering testimony, Defendants offered Plaintiff's medical records, which include physical therapy records from the periods he took physical therapy at Pinckneyville. The records indicate that Plaintiff started physical therapy on July 2, 2012 when he received a consultation on his condition. Plaintiff began his physical therapy on July 9, 2012. During his physical therapy sessions, Plaintiff did passive range of motion movements including stretches, shoulder blade/scapula squeezes, shoulder shrugs, and a shoulder flex utilizing a cane. Plaintiff also used a pulley system to practice his range of motion exercises, but there is no indication that the pulley was weighted.

There is no indication that Plaintiff used any type of weighted system in doing these exercises. In fact, the physical therapy records reflect that Plaintiff asked on at least two occasions when he could start using free weights or other heavier weights. He was told that the use of free weights was not indicated for his condition given his impaired strength. The records also indicate that Plaintiff continued to be in pain and felt that the physical therapy was not helping him to improve, a sentiment that was echoed by Plaintiff when he testified at the preliminary injunction hearing. The physical therapy consults that Plaintiff received periodically indicate that while Plaintiff's shoulders improved, he still suffered from a significantly limited range of motion and chronic impaired strength. Plaintiff was finally released from physical therapy on February 11, 2013 with the indication that he could perform his range of

motion exercises independently and that independent exercise was strongly recommended.

## CONCLUSIONS OF LAW

### A. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct

the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke***, 593 F.2d 772, 774 (7th Cir. 1978)).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

B. Analysis

Plaintiff initially asked this Court for an order requiring Pinckneyville to provide him with meaningful access to weight bearing and cardio exercise. At the initial evidentiary hearing, it was determined that Plaintiff had access to the weight room but was unable to utilize any of the machines in the room due to the pain and limited range of motion in his shoulders. Thus, Plaintiff indicated that he wanted free weights so that he could work on his range of motion and elevate his heart rate by swinging weights

back and forth at his side. He acknowledged that he could not do range of motion movements with the weights but could achieve a cardio exercise by swinging the weights at his side. Thus, the undersigned narrowed Plaintiff's injunctive request to one for free weights (although it appears to the undersigned that Plaintiff ultimately wants to be transferred to another facility that has access to free weights) as he cannot physically utilize any of the machines in the weight room even with an order from the Court providing him with additional access to the room or access to a specific machine.

The undersigned, however, finds that Plaintiff has not shown that he is likely to succeed on the merits of his claim regarding access to free weights. Here, the undersigned finds that free weights are not necessary for the type of exercises that he needs given his injuries. It is clear from the physical therapy records that Plaintiff was instructed at the end of his physical therapy sessions to continue with range of motion exercises in order to improve his shoulder range of motion. Although the physical therapist did not indicate in his final consult what those exercises were specifically, the records make clear that Plaintiff, through his time in physical therapy, was instructed to stretch and complete various exercises including shoulder shrugs, shoulder squeezes, and lifted shoulder raises using a cane. Although a cane and a pulley system were utilized in physical therapy at times, there is no indication that these objects were weighted. Further the final consult from the physical therapist indicates that he could perform these exercises "independently" which seems to suggest that Plaintiff could do these exercises without any additional weights or exercise equipment.

While Plaintiff now requests free weights, there is no indication that those weights are needed to perform his range of motion exercises and improve his health. His previous exercises in physical therapy did not include weights. In fact, the physical therapy records indicate that Plaintiff asked to use weights and was told that weights were not needed for the exercise and that he could not use weights given his limited range of motion and strength level at the time. There is no evidence that Plaintiff's range of motion has increased such that Plaintiff could now utilize weights in his exercise. In fact, the physical therapy records and Plaintiff's own testimony indicates that Plaintiff improved very little with his range of motion in his shoulders and he still had limited strength. Plaintiff also testified that he could not perform the movements of any of the machines in the weight room due to his limited range of motion and shoulder pain, and that even with free weights he could not perform the movements. Thus, there is no evidence that Plaintiff's range of motion and strength is such that he could adequately utilize free weights in a work out.

Nor is there any indication in the record that Plaintiff requires free weights for any specific reason, other than his own desire, as the stretches, shoulder shrugs, shoulder blade squeezes, and other range of motion exercises can be done without weights. While Plaintiff did utilize a cane and a pulley system in his physical therapy sessions for some exercises, there is no indication that the movements could not be done without those items and Plaintiff was instructed to participate in "independent" range of motion exercises on his own. Plaintiff also testified that he has access to the track and

can achieve a cardio workout by pushing himself around the track. Thus, there is no evidence that weights are necessary for Plaintiff to practice his range of motion exercises or achieve a cardio workout. Accordingly, the undersigned finds that Plaintiff has failed to present any evidence that free weights are necessary to provide Plaintiff with adequate exercise for his medical condition. As such, the undersigned **RECOMMENDS** that Plaintiff's motion for preliminary injunction seeking access to free weights be **DENIED**.

### CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has not met his burden of establishing a need for his preliminary injunction request and **DENY** Plaintiff's motion for preliminary injunction (Doc. 51).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 9, 2016.**

**IT IS SO ORDERED**.
DATED: April 20, 2016.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge