# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARC NORFLEET,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.   15-cv-160-MJR-SCW** |
| | ) | |
| **DONALD GAETZ, PATRICK KEANE,** | ) | |
| **CHRISTINE BROWN, MICHAEL** | ) | |
| **EDWARDS, THOMAS SPILLER, EARL** | ) | |
| **WILSON, and the ILLINOIS** | ) | |
| **DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Marc Norfleet filed his complaint against various individuals and the Illinois Department of Corrections for retaliation, deliberate indifference to his medical needs, and violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").   This matter is before the Court on Defendants' motion for summary judgment (Docs. 151, 152).   Plaintiff has filed a response (Doc. 160) as well as two supplemental exhibits (Docs. 164, 165).   Based on the following, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment.

### FACTUAL BACKGROUND

Plaintiff's complaint, as narrowed by the Court's threshold order (Doc. 17),

alleges that Defendants are not providing him access to exercise equipment at Pinckneyville Correctional Center. Specifically, his complaint alleges that: Defendant Keane retaliated against Plaintiff for filing the suit *Norfleet v. Benton*, Case No. 09-cv-347-JPG, by instructing officials at Pinckneyville and other facilities that they were not required to accommodate Plaintiff's and other disabled inmate's access to recreational equipment and facilities (Count 2); that IDOC violated the Americans with Disabilities Act and the Rehabilitation Act due to Plaintiff being unable to access exercise equipment and facilities at Pinckneyville, including pull-up/dip bars, weight/exercise machines, a usable wheelchair exercise track, handball and basketball courts, and by failing to provide him with a sports wheelchair and/or padded gloves (Count 3); and that Donald Gaetz, Earl Wilson, Christine Brown, Patrick Keane, Michael Edwards, and Thomas Spiller were deliberately indifferent by failing to provide him with accessible exercise equipment and facilities sufficient for him to maintain his physical health (Count 4) (Doc. 17, p. 8-9).

Plaintiff has been incarcerated within the Illinois Department of Corrections since 2006. He suffers from a condition called radiculopathy, which affects the nerves and causes compression of the spine (Doc. 152-1, p. 3; 160-1, p. 47). He has suffered from the condition since 1999 and is currently confined to a wheelchair (Doc. 152-1 p. 3-4). Plaintiff used a wheelchair prior to his incarceration and continues to use a wheelchair as a result of his condition (*Id*. at p. 4). Plaintiff also testified that he suffers from twenty-four hour shoulder pain; although he admits his shoulder pain has not been

documented by the prison doctors (*Id.* at p. 4).   He testified that a Dr. Shaw diagnosed his shoulder issue as a lactic acid build-up and prescribed Plaintiff with six months of physical therapy while at Pinckneyville (*Id.* at p. 4, 7).   He was directed to use stretch bands on the wall to improve his range of motion (*Id.* at p. 11).   Plaintiff's submitted medical records indicate that he was given physical therapy for shoulder pain with pulleys starting July 10, 2012 (Doc. 160-1, p. 69-71).   He last had physical therapy in February 2013 (Doc. 152-1, p. 11).   He was also directed to perform in-cell exercises including shrugging his shoulders and rotating his shoulder (*Id.*).   Plaintiff acknowledged that the exercises helped with his stiffness and pain and that he practices the exercises every morning but he is "looking for progression." (*Id.*).   He still has trouble lifting his hands above his head and there is too much pain when he extends them over his head; he believes that the pain is from the weight of his arms (*Id.*).   He can swing them (*Id.*).   He continues to do shoulder shrugs in the morning, albeit with difficulties as the healthcare unit has taken some of his medications away (*Id.* at p. 18).

Plaintiff also suffers from stomach cramps, but he testified that medical professionals are ignoring the issue and that he has never been prescribed medication for the condition (Doc. 152-1, p. 4. 5).   He also started suffering from chest pain while at Lawrence Correctional Center (*Id.* at p. 6).   His chest continues to hurt when he coughs and twists a certain way (*Id.*).   He had an EKG six months prior to his January 4, 2017, deposition and was told that he appears fine (*Id.* at p. 7).

Plaintiff acknowledges that no medical professional has diagnosed his conditions

as resulting from lack of exercise (Doc. 152-1, p. 8-9).   Plaintiff testified that he has lost shoulder range of motion and can no longer reach up to a top shelf, an activity which he labels an exercise (*Id*. at p. 9).   He believes that the loss of range of motion is due to loss of movement activities (*Id*. at p. 12).   Plaintiff indicated that he goes to the gym for therapy purposes, but he cannot utilize any of the machines in order to practice reaching (*Id*. at p. 9).   He had therapy for a weak chest and he believes he needs exercise to improve his shoulder range of motion and strengthen his chest (*Id*.).   He testified that the medical professionals understood his shoulder pain was from lack of exercise, but later he acknowledged that no doctor has indicated his shoulder pain is due to lack of exercise (*Id*. at p. 11).   Rather, he testified that it's his own "complaint" that his pain is from lack of exercise (*Id*.).   He also believes that he was prescribed therapy for lack of exercise, although he acknowledges that no doctor told him that was the case (*Id*.).   The therapy prescription indicates that it is for shoulder pain (Doc. 160-1, p. 70-71).

Plaintiff testified that he does not have the access he feels he needs for proper ADA compliant exercise opportunities while at Pinckneyville (Doc. 152-1, p. 5).[1] Plaintiff testified that Level II facilities, except for Lawrence Correctional Center, have proper exercise equipment which is wheelchair accessible (*Id*.).   Plaintiff testified that he goes to the gym every time it is offered, but he does not utilize the equipment in the gym (Doc. 152-1, p. 18).   He admitted that the gym is offered nearly every Friday, and he goes every Friday that it is offered (*Id*. at p. 19).   In fact, Plaintiff went to the gym the

---

[1] Plaintiff has recently transferred to Menard Correctional Center.

Friday before his deposition (*Id*.). Plaintiff stated that no one in a wheelchair can utilize the equipment; although some are able to play ping pong, the wheelchair-bound inmates do not use the equipment (*Id*.). While non-disabled inmates have several machines in the gym, Plaintiff testified that many of the machines require an inmate to use their legs on the machines or to get out of the wheelchair to utilize the machine (*Id*. at p. 9, 22). Plaintiff testified that there is nothing in the gym for him to use for movement activities (*Id*. at p. 12).

Plaintiff testified that he needs free weights so that he can move and get his blood pressure up (Doc. 152-1, p. 12). He believes that he could lift 10 to 15 pounds and get his blood pressure up (*Id*.). He believes that if he can do that, then his heart will get stronger (*Id*.). He believes that free weights will help him because he used them before he was incarcerated (*Id.* at p. 13). He believes he can use the weights as a form of cardio exercise and, since he is in a wheelchair, his cardio is limited to range of motion exercises (*Id*. at p. 12). Plaintiff testified that he can swing his arms without weights, for as long as an exercise routine would last, and still not get out of breath (*Id*. at p. 23). He testified that he needs added weights, up to 25 pounds, in order to get his heart rate up (*Id*.). He has never had free weights while incarcerated (*Id*. at p. 13).

Plaintiff also takes issue with Pinckneyville's ADA compliant track. He acknowledges that Pinckneyville has such a track but that he has not been able to access it since March 2016 (Doc. 152-1, p. 13). Plaintiff received access to the track through February 2016 (*Id*. at p. 17). The track is six feet wide and "superficial lumpy blacktop"

(*Id.* at p. 22). Plaintiff testified that there are rocks and mud on some parts of the track (*Id.*). He used to be able to go around the track two times, although not entirely around as there was mud on the track (*Id.* at p. 24). However, because he lacks gloves he can only go around one time as he develops blisters (*Id.*). He testified that he cannot get the recommended thirty minutes of exercise a day because he lacks gloves and blisters his hands within the first twenty minutes (*Id.*). He testified that once he develops blisters he can only "sit there on the yard wishing I could keep doing what I want to" (*Id.*).

Plaintiff hasn't gone to the track since March 2016, but he does have access to two other yards (*Id.* at p. 17). He has access to the basketball courts and rolls across the actual court, though inmates yell at him because they are playing basketball (*Id.*). He also has access to the handball court but must wait until players miss a ball in order to go around the court (*Id.*). There are also sidewalks, but he has to wait his turn as there are other inmates walking the sidewalk (*Id.*). Plaintiff further testified that there are four different yards that he has alternating access to, and there are pull-up bars for inmates with disabilities on three of the yards (*Id.* at p. 24). However, Plaintiff testified that there is mud near some of them and that he can't reach up to the bar (*Id.* at p. 25). Plaintiff testified that he is trying to work his way up to being able to reach up that high but he currently cannot use the pull-up bar (*Id.* at p. 26). He believes that the yards are not ADA compliant (*Id.* at p. 17).

Plaintiff testified that, even if he had access to it, he can no longer use the track because he no longer receives a morning muscle relaxer (*Id.* at p. 13). Plaintiff used to

take Neurontin and Baclofen, but he is no longer prescribed Baclofen. His morning dosage of Neurontin was discontinued (*Id*. at 13-14). He testified that he was able to use the handball and basketball courts for cardio-type exercise until the healthcare unit stopped his medications in October 2016 (*Id*. at p. 18). Plaintiff also testified that he can only go three quarters of the way around the track (*Id*. at p. 17).

Plaintiff also has problems with his wheelchair. Plaintiff states that his front wheel has fallen off of his wheelchair in the yard (Doc. 152-1, p. 14). He testified that IDOC provides the cheapest equipment they can (*Id*.). He testified that the healthcare unit refuses to provide him with another wheelchair (*Id*). The wheels and the legs fall off all the time (*Id*. at p. 18, 22). The brakes have also fallen off multiple times (*Id*. at p. 22). He has filed grievances asking for a new wheelchair but has been told that the healthcare unit is on a budget and that his chair is ADA compliant (*Id*.). Because of the condition of the wheelchairs, no wheelchair-bound inmate can utilize the handball or basketball courts (*Id*. at p. 18).

Plaintiff also takes issue with the gloves he has been given to use with his wheelchair. Plaintiff testified that he used to receive "driver's gloves" from the healthcare unit so that he could push himself around the track (Doc. 152-1, p. 23). He used to be able to push himself around the track, though he would have to weave around people and stop for joggers and walkers because it is only six feet wide (*Id*.). But without gloves, he gets blisters on his hand, and he is afraid he will get diseases and infections from the blisters (*Id*.). He notes that MRSA is a problem in the prison (*Id*.).

He has been told that eventually his hands will callous over from the blisters and he doesn't need gloves (*Id*.). Plaintiff testified that Wexford prescribes the gloves and that he was given adequate gloves in 2007, but the gloves were lost in 2008 during a transfer from another facility (*Id*. at p. 23-24). He has received another pair of gloves, but he claims they are not adequate as they are slippery (*Id*.). He does not wear them (*Id*.).

Plaintiff's complaint also alleges that Patrick Keane is retaliating against him. Plaintiff testified that Keane testified in a preliminary injunction hearing in another case regarding the compliance of Menard Correctional Center's ADA facilities and, at that time, Keane assured Plaintiff and the Court that accommodations would be made for Plaintiff to exercise (Doc. 152-1, p. 19). However, he was transferred to Pinckneyville and there was no ADA compliant equipment (*Id*.). Plaintiff testified that in Keane's deposition in the other case, Keane testified that he does not have to provide Plaintiff with reasonable accommodations for exercise (*Id*.). Keane's testimony was in response to a question that asked:

> Q: From what you have just told me previously, the Department of Corrections does not have an obligation to ensure that a wheelchair-bound offender could access or use [the] pull-up bar [on the yard]?
>
> Keane: During recreation time I believe so, yes.

(Doc. 160-1, p. 44). Thus, Plaintiff testified that when he writes a grievance regarding lack of ADA compliant equipment the grievance goes to Keane, the ADA Compliance Officer, who denies it and does not provide wheelchair-bound inmates with ADA

equipment (Doc. 152-1, p. 19). Plaintiff testified that correctional staff sends grievances to Patrick Keane, who denies them, and then the director signs off on the denial (*Id.* at p. 20). Keane makes the final decision regarding ADA compliance according to Plaintiff (*Id.*). Plaintiff testified that he is not receiving appropriate equipment and access to ADA facilities because Keane denies those requests (*Id*). Plaintiff testified that Keane promised Plaintiff in his other case that he would have accommodations when he arrived at Pinckneyville and then he did not provide those accommodations (*Id.*). Plaintiff indicated that he believed the failure to accommodate his needs was intentional on Keane's part (*Id.* at p. 21).

Plaintiff acknowledged, however, that none of his grievances to the ARB had Keane's signature on them and that does he not know for a fact that Keane responds to the grievances, instead testifying that they are marked ADA disability and that Keane's job is ADA compliance (Doc. 152-1, p. 20). Plaintiff later testified that Sherry Benton reviews the grievances and that she does not refer the grievances to Keane, even though she is supposed to do so (*Id.* at p. 21). Plaintiff testified that in the grievances Sherry Benton identifies Keane and his responsibilities (*Id.* at p. 26). He believes that Keane denied him accommodation because he testified in Plaintiff's other case (*Id.* at p. 21).

Plaintiff's complaint also alleges that several individual defendants were deliberately indifferent to his need for accessible exercise equipment and facilities. Plaintiff testified that all of the individual defendants were aware that he was being denied opportunities for physical exercise and that they are in positions to have his

disability accommodated (Doc. 152-1, p. 25). According to Plaintiff, those individuals are in the middle of the chain to Springfield and the director and they can have IDOC accommodate his disability (*Id*.). Plaintiff testified that Earl Wilson was the warden over ADA services at Pinckneyville from 2011-2012 and that he lied in a grievance indicating that exercise was offered seven days a week (*Id*. at p. 26). Plaintiff testified that Wilson also had a duty to contact Keane and provide him with annual reports (*Id*. at p. 26-27). Plaintiff testified he spoke to Wilson every time he was on the walk about his issues (*Id*. at p. 27). He also sent grievances and letters to Wilson (*Id*.). While Wilson responded to grievances, he did not respond to letters (Id.).

Plaintiff also testified that Thomas Spiller, the former warden, was also liable in the same way that Wilson was liable (Doc. 152-1, p. 27). Plaintiff testified he wrote grievances to Spiller and spoke to him in person (*Id*. at p. 28). He also wrote grievances and sent letters to Warden Gaetz (*Id*.). Gaetz also signed off on a number of grievances (*Id*.). Plaintiff also testified that he spoke with Michael Edwards in person about his issues (*Id*.). As to Christine Brown, Plaintiff testified that she was the healthcare administrator and that he would write grievances about his wheelchair falling apart but she would not provide him with another wheelchair (*Id*.). Plaintiff testified that Brown told him the wheelchair was compliant (*Id*. at p. 29).

## A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation omitted) (citing** FED. R. CIV. P. 56(a)). *See also Ruffin-Thompsons v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth facts showing that there is not genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56 (e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Balance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "The nonmovant must create more than mere doubt as to the material facts and will not prevail by relying on a mere scintilla of evidence to support its position." *CAE, Inc. v. Clean Air Eng'g, Inc.*, **267 F.3d**

660, 677 (7th Cir. 2001) (internal citations and quotations omitted). An opposing party will only succeed "when they present definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, **233 F.3d 432, 437 (7th Cir. 2000) (internal citations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court will "draw all reasonable inferences in favor of the non-movant." *Id.* Even if the facts are not in dispute, "[s]ummary judgment is inappropriate when alternate inferences can be drawn from the available evidence." *Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004*), *abrogated on other grounds by Spiegla II,* **481 F.3d 961 (7th Cir. 2007). See also,** *Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## B. Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")

The ADA provides that "no qualified individual with a disability shall, because of that disability…be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. **42 U.S.C. § 12132.** Similarly, section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against individuals solely on the person's disability. **29 U.S.C. § 794(a).** The Seventh Circuit has found that the Rehabilitation Act and the Americans with Disabilities Act is "co-extensive" and that the analysis is the same except that the Rehabilitation Act requires an "additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dept. of Corrections*, **684 F.3d 667,**

671-72 (7th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir.2010). Thus, to maintain a claim under the Rehabilitation Act, the plaintiff must establish that: "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006).[2] "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.

## C. Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *See also Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. "the harm would have occurred anyway." *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011).

---

[2] While the Rehabilitation Act has the added factor that the program at issue receive federal financial assistance, this factor is not at issue here given that the Illinois Department of Corrections receives federal funding. *Norfleet*, 684 F.3d at 690.

At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, **544 F.3d 752, 757 (7th Cir. 2008);** *Devbrow v. Gallegos*, **735 F.3d 584, 588 (7th Cir. 2013).**

### D. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009).** A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011) (citing** *Johnson v. Snyder*, **444 F.3d 579, 584 (7th Cir. 2006)).** The first prong is whether the prisoner has an "objectively serious medical condition." *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, **123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (citing** *Pyles v. Fahim,*

**771 F.3d 403, 409 (7th Cir.2014)).** It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm") ((internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* **at 653.** The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, **771 F.3d 403, 409 (7th Cir. 2014);** *see also Hammond v. Rector*, **123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish Eighth Amendment deliberate indifference").**

## A. ADA and RA

The Court first notes that Plaintiff's response relies heavily on the Court's threshold order issued on June 9, 2015 (Doc. 17). Plaintiff points out in many parts of his brief that the Court's threshold order supports Plaintiff's claims and thus summary judgment should be denied. However, in the threshold order, Plaintiff's claims were reviewed under **28 U.S.C. § 1915A**, which requires the Court to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. **28 U.S.C. § 1915A(b).** This analysis is far different from the standard the Court employs at the summary judgment stage. The Seventh Circuit has stated on numerous occasions that the summary judgment stage is the "put up or shut up moment in a lawsuit." *Springer v. Durflinger*, **518 F.3d 479, 484 (7th Cir. 2008) (quoting** *Steen v. Myers*, **486 F.3d 1017, 1022 (7th Cir. 2007);** *Hammel v. Eau Galle Cheese Factory*, **407 F.3d 852, 859 (7th Cir. 2005)).** At this stage, Plaintiff must "show what evidence [he] has that would convince a trier of fact to accept [his] version of the events." *Id.* Thus, at this stage, Plaintiff can no longer simply rely on the findings in the threshold order to survive summary judgment, as that review focused solely on the allegations in the complaint, which are accepted as true at that stage. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Cesal v. Moats*, 851 F.3d 714, 720 (7th **Cir. 2017) (§1915A review applies the same standard used in motions under Rule 12(b)(6)).**

### 1. Facilities and Equipment

IDOC does not dispute that Plaintiff suffers from a disability. Plaintiff is confined to a wheelchair and cannot walk, stand, or lift/push with his legs. Plaintiff's complaint alleges that he is being discriminated against because he is excluded from recreational and exercise programs due to the fact that IDOC refuses to adequately accommodate his disability. To prevail, Plaintiff must establish that he was denied the benefits of services, programs, or activities by the prison. *Love v. Westville Corr. Ctr.*, **103 F.3d 558, 560 (7th Cir. 1996);** *Jaros*, **684 F.3d at 672.** While IDOC argues that recreational and exercise are not major life activities such that his impairment would require an accommodation, the Seventh Circuit has stated in another case brought by Plaintiff that recreation is a "program or activity" under the Act. *Norfleet v. Walker*, **684 F.3d 688, 690 (7th Cir. 2012) (citing** *Crawford v. Indiana Department of Corrections*, **115 F.3d 481, 483 (7th Cir. 1997);** *Bryant v. Madigan*, **84 F.3d 246, 249 (7th Cir. 1996)).** Thus, the Court finds that exercise and recreation are activities which Plaintiff must receive a reasonable accommodation for under the Act.

But the Court finds no evidence that Plaintiff has been denied access to recreation at Pinckneyville Correctional Center. Plaintiff testified in his deposition that he receives access to the yard for an hour and fifteen minutes three to four times a week (Doc. 152-1, p. 24). He also has access to the ADA gym every Friday. Plaintiff testified that there is a track on one of the four yards and the other yards have basketball and handball courts and sidewalks. While Plaintiff complains that the track has mud and

rocks on it, he testified that he was able to go around the track at least two times before his medication was taken away by the healthcare unit. While he complains that there are other inmates on the basketball and handball courts, as well as the sidewalks, he testified that he is able to go around or across them by waiting his turn. Plaintiff also testified that there are handicap accessible pull-up bars on three of the yards and that there is exercise equipment in the gym. The evidence clearly indicates that Plaintiff has ample access to exercise and recreation at Pinckneyville Correctional Center.

However, Plaintiff argues that while Pinckneyville has ADA facilities and equipment, he cannot access these facilities and equipment due to various other physical and technical issues, including shoulder pain, lack of medication, and lack of gloves. Plaintiff testified that he cannot reach the pull-up bars on the yard or use the equipment in the gym because he has shoulder pain. While Plaintiff testified in his deposition that no one in a wheelchair can use the equipment in the gym, this is contradictory to his earlier testimony before the Court. In support of his motion for preliminary injunction, Plaintiff testified at an evidentiary hearing that he cannot access the machines because it is too painful on his shoulders to transfer from his chair to the machine (Doc. 78, p. 5). He testified that he can complete one transfer but then there is too much pain in his shoulders to continue (*Id.*). He further testified that even if he was able to access the machines, he is unable to perform the machine's movements due to pain in his shoulders (*Id.*). He testified that he is unable to move his arms above his head due to the pain (*Id.*). He indicated that he could not use his arms to perform the movements on a pectoral fly,

shoulder, or chest press machine (*Id*.). Plaintiff also testified that he cannot reach the pull-up bar because he cannot lift his arms up that high and that he can't lift his arms up over his head because it's too much pain, just from the weight of his arms (Doc. 152-1, p. 11).

Thus, the evidence before the Court indicates that even with the modifications provided by IDOC, Plaintiff cannot access the facilities and equipment due to his shoulder pain and limitations. While the ADA does require accommodations be made for individuals with disabilities, those accommodations must be necessary and the plaintiff must show "that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Dadian v. Village of Wilmette*, **269 F.3d 831, 838 (7th Cir. 2001) (citing** *Bronk v. Ineichen*, **54 F.3d 425, 429 (7th Cir. 1995)).** But providing Plaintiff with additional access to the facilities or even making the machines more accommodating for wheelchair access would not enhance Plaintiff's quality of life or even out the effects of his disability because he cannot do the movements that are required for the exercises. Plaintiff testified that the own weight of his arms above his head is too painful, thus there is no evidence to suggest that he could utilize any of the upper body machines even if he had more or easier access to them.

Similarly, his request for free weights is not a necessary accommodation. Plaintiff testified that he cannot use the exercise machines because of his shoulder pain, nor can he use the pull-up bar because he cannot reach over his head and the own

weight of his arms over his head causes too much pain. Thus, his requested accommodation of free weights is not necessary to improve his ability to reach because he cannot currently lift his own arm weight over his head. Plaintiff can practice and improve his reach capabilities by practicing reaching above his head without weights. He could also practice this technique without the use of other equipment or by simply reaching for the pull-up bar, which he testified was available on some of the yards. While Plaintiff wants to swing the weights back and forth, there is no evidence that such activities would improve his reach capabilities. Thus, there is no evidence that the free weights are necessary at this time to improve Plaintiff's reach range of motion. To the extent he wants to weights for cardio purposes, the evidence before the Court demonstrates that he could increase his heart rate by use of the track or sidewalk without having free weights.

Nor is there any evidence that the free-weights would help him physically, in any way. Plaintiff has not offered any evidence, beyond his own opinion, that five to ten pound weights will increase his cardio or help improve his range of motion. Instead, Plaintiff testified that the doctors told him to perform in-cell exercises for his shoulders, including shrugs and shoulder rotations. There is nothing in the record to suggest that he was ordered to use weights. While he was provided with physical therapy, which included a pulley system (Doc. 160-1, p. 69-70), that pulley system did not contain weights, nor is there any order from a treating physician that Plaintiff needs weights. As such, there is no evidence that free-weights are a necessary accommodation for

Plaintiff's disability.

In sum, IDOC has provided Plaintiff with access to ADA compliant equipment that he cannot access due to additional issues with his shoulders. While he makes requests for additional accommodations beyond what the prison has already provided, there is no evidence that those accommodations would improve Plaintiff's quality of life because his shoulder pain prevents him from completing the movements required of those exercises. Instead, Plaintiff has been instructed by his doctor to perform certain in-cell exercises, including range of motion exercises for his shoulders. These do not require equipment or any additional access to facilities.

The Court finds no evidence that IDOC has denied Plaintiff access to exercise and recreational opportunities because of his disability. Rather, the evidence suggests that Plaintiff's inability to access those facilities is not due to any action or inaction on the part of IDOC, but rather due to Plaintiff's shoulder issues, and that there is no requested accommodation that would be remedy that inability. Accordingly, the Court finds that IDOC is entitled to summary judgment on Plaintiff's ADA and RA claims.

### 2. *Wheelchair*

Similarly, the Court does not find that Plaintiff is being denied access to facilities and equipment by being denied a sports wheelchair. Plaintiff testified that he has a wheelchair, but that the legs, brakes, and wheels keep failing off (Doc. 152-1, p. 18, 22). But there is no evidence to suggest that IDOC refuses to fix the wheelchair. In fact, Plaintiff testified that his wheelchair has been fixed nine times (*Id*. at p. 18). Rather,

Plaintiff just complains that he wants a new wheelchair, preferably a sports wheelchair. But there is no evidence to suggest that such a chair is necessary to enhance his quality of life. *Dadian*, **269 F.3d at 838.** He has a working wheelchair that is repaired when it breaks. He can use that chair on the grounds of the prison. As such, the Court finds no evidence to demonstrate that the lack of a "sports wheelchair" denies Plaintiff access to programs or services at Pinckneyville.

### 3. Gloves

However, the Court finds that there remains an issue as to whether special padded gloves are a necessary accommodation. Plaintiff complains that he does not have padded gloves and thus he is unable to go around the track as many times as he previously was able to go around. He testified that he gets blisters because of the lack of gloves. While Plaintiff acknowledges that he has been provided with a pair of gloves, he argues those gloves are inadequate. He complains that they are slippery and that he refuses to use them. Plaintiff further testified that he previously was given appropriate "driver" gloves but when those were lost, the healthcare unit replaced them with regular work gloves, which Plaintiff argues are inadequate.

Here, Plaintiff has provided some evidence that the gloves he currently is being provided are inadequate. He has provided evidence that the current gloves are slippery and are quite different from the gloves he was previously provided for wheelchair use. IDOC, on the other hand, has failed to present any evidence refuting Plaintiff's testimony that the gloves he is currently provided are adequate for exercise

and recreation purposes.    Nor has IDOC offered any evidence to suggest that gloves are not necessary or are an unreasonable accommodation.    Instead, IDOC argues that Plaintiff has failed to show that the lack of gloves prevents him from accessing the services, programs, or activities at IDOC.    Plaintiff, however, has testified that he cannot push himself around the track without gloves because he gets blisters.    The blisters prevent him from engaging in further cardio exercise on the track, the only real exercise he is able to complete given his shoulder pain.    According to Plaintiff's testimony, he is prevented from pushing his wheelchair around the track for exercise purposes because the gloves currently provided are slippery, and he gets blisters without gloves.    Thus, the Court denies summary judgment at this time because an issue remains as to whether gloves are a necessary or reasonable accommodation.

   *4.  Compensatory Damages*

   In light of the fact that there remains an issue as to whether IDOC violated the ADA and RA by providing Plaintiff with work gloves as opposed to driving or work-out gloves, the Court turns to IDOC's next argument, which is that Plaintiff should be barred from obtaining compensatory damages.    Compensatory damages are available under both acts, although punitive damages are not.    ***CTL ex rel. Trebatoski v. Ashland School Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).**    Such damages are only available for intentional discrimination.    What constitutes intentional discrimination is disputed among the circuits, and the Seventh Circuit has not indicated its position on the appropriate standard.    ***Id.* at 528, n. 4.**    While the majority of the circuits hold that deliberate

indifference satisfies the intentional discrimination standard, some circuits have held that such discrimination requires a higher showing of discriminatory intent.   *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, **729 F.3d 248, 260-65 (3rd Cir. 2013) (identifying split and adopting majority standard of deliberate indifference).**

However, the Court finds that Plaintiff's claim of intentional discrimination fails even under the lesser standard of deliberate indifference.   This is not the type of case where Plaintiff was refused gloves altogether. He was provided with gloves, but he finds that they are ineffective.   Further, Plaintiff testified that the gloves were provided by the healthcare unit by a doctor, as opposed to an IDOC official.   As IDOC officials were not providing the gloves to Plaintiff, there is no evidence to suggest that IDOC had knowledge that Plaintiff had allegedly inadequate gloves.   As such, the Court finds no evidence of intentional discrimination by IDOC.

## B.  Retaliation

Defendant Keane argues that he is entitled to summary judgment on Plaintiff's retaliation claim against him because Plaintiff has not shown that he instructed staff to deny Plaintiff's ADA requests.   Plaintiff argues that Keane is intentionally retaliating against him based on two portions of a deposition Keane gave in the case *Norfleet v. Walker, et. a*l, Case No. 09-cv-347.   In that deposition, Keane indicated that IDOC was only required to provide wheelchair-bound inmates with access to recreation and that he did not have to ensure that such inmates had access to a pull-up bar (Doc. 160-1, p. 44). This statement does not evidence any retaliation on Keane's part against Plaintiff or any

other inmate. Rather, it is a statement of what Keane believes is required of IDOC under the ADA. There is nothing in this statement that shows Keane's intent to retaliate against Plaintiff as he alleges.

Plaintiff points to a second portion of the same deposition as evidence that Keane is retaliating against Plaintiff. In that portion of Keane's deposition, Keane testified that his role as ADA Compliance Officer is not to approve accommodations at an individual facility (Doc. 160-1, p. 40). Rather, Keane testified that when an inmate writes a grievance regarding an ADA issue, he consults with the ADA coordinator at the facility and that coordinator and the warden have the ability to make the accommodation (*Id*. at p. 41). Plaintiff argues that this testimony shows that Keane is the one reviewing and denying his grievances regarding the ADA accommodations he seeks.

Although Keane testified as to his general job description and his role in the grievance process, there is no evidence that he denied Plaintiff's requests in this case, let alone that he did so out of retaliation. Plaintiff has failed to offer any evidence that Keane instructed officials at Pinckneyville to deny Plaintiff's requests for ADA compliant facilities and equipment. In fact, Plaintiff acknowledged in his deposition that none of the grievances have Keane's signature on them. Further, while Plaintiff testified that some of the ARB responses mention Keane, he has not offered any of those grievances or any evidence showing that Keane specifically denied Plaintiff's requests. Nor has he offered any evidence, beyond his own belief, that Keane participated in denying his ADA requests and grievances in retaliation for Keane having to testify in

another case.   Accordingly, the Court **GRANTS** Defendant Keane's motion for summary judgment as it relates to Plaintiff's retaliation claim against him.

## C. Deliberate Indifference

Defendants also argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claims for allegedly denying him access to exercise equipment and facilities.   Lack of exercise can rise to the level a constitutional violation.   *Thomas v. Ramos*, **130 F.3d 754, 763 (7th Cir. 1997).**   The Seventh Circuit has noted that "exercise is now regarded in many quarters as an indispensable component of preventive medicine."   *Delaney v. DeTella*, **256 F.3d 679, 683 (7th Cir. 2001)(quoting** *Anderson v. Romero*, **72 F.3d 518, 528 (7th Cir. 1995)) (internal quotations omitted).**   A short-term denial of exercise, however, does not constitute a constitutional deprivation, though longer periods or shorter periods imposed for trivial reasons could amount to a violation.   *Id.; see also Turley v. Rednour*, **729 F.3d 645, 652 (7th Cir. 2013).**

As to Wilson, Gaetz, Edwards, Keane and Spiller, Plaintiff testified that they were all wardens during the relevant period and that he wrote grievances and complained to them about his lack of access to facilities and equipment, but Plaintiff alleges that they denied his grievances.   He believes that they were aware he was being denied opportunities for physical exercise and that it was in their ability to provide him with adequate exercise opportunities.   Plaintiff argues in his response that these Defendants have consistently rejected his grievances.

While the grievances may put the Defendants on notice of Plaintiff's issues, *see*

***Turley*, 729 F.3d at 652-53; *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015)**, the Court finds no evidence of deliberate indifference on the Defendants' part. There is no evidence that Defendants denied Plaintiff access to equipment and facilities. As the Court has previously noted in analyzing Plaintiff's ADA and RA claims, Plaintiff testified that he had access to both the yard and the ADA gym. He testified that the ADA track was compliant although portions of it had mud and rocks. Although Plaintiff testified that the terrain was rough at spots, he was still able to go around the track two times but now cannot because the healthcare unit took away his muscle relaxer. He also testified that he cannot use the track as much as he wants because the healthcare unit refuses to provide him with gloves. However, he has access to the track, and there is no evidence that Defendants are denying him access. Plaintiff also testified that he has access to the basketball courts, handball courts, and sidewalk. While he can't play the sports in his chair, he can push himself around and/or across the courts. While Plaintiff argues that the other inmates yell at him or that he has to wait his turn when there are other people, he fails to point to any case law that indicates that he must be provided with exclusive access to exercise facilities.

There also is no evidence of Defendants being deliberately indifferent in providing Plaintiff with access to ADA equipment. Plaintiff acknowledged in his deposition that he has access to pull-up bars for persons with disabilities on the three of the outdoor yards. Plaintiff testified, however, that he cannot physically reach up to the bars given his current problems with shoulder pain. Similarly, Plaintiff acknowledged

in his deposition that he has access to the ADA compliant gym every Friday. While Plaintiff testified in his deposition that the machines require an inmate to get out of his wheelchair or use his legs, making the gym not compliant, he previously testified before the Court in an evidentiary hearing that he could use the machines if he was able to transfer to the machine but cannot do so because of his shoulder pain (Doc. 78, p. 5). Plaintiff further testified at that hearing that he unable to perform the movements on the machines due to his shoulder pain, and not because they are not ADA complaint (*Id.*). Thus, the evidence before the Court is that Plaintiff is provided with access to ADA compliant facilities and equipment but Plaintiff cannot access the equipment due to his shoulder pain, as opposed to the deliberate indifference of any named Defendant.

Similarly, the Court finds no evidence of deliberate indifference on Christine Brown's part. Plaintiff testified that Brown was the healthcare administrator. He complained to her about his wheelchair falling apart, but she told him it was ADA compliant (Doc. 152-1, p. 28-29; Doc. 1, p. 32). Plaintiff also testified that the wheels, legs, and brakes fall off, but he has not claimed that Brown refused to fix the wheelchair. There is no evidence that his wheelchair has broken to the point where it could not be fixed or that Brown, or any other Defendant, has failed to fix his chair. He merely wants a new wheelchair, but that does not establish that Brown was deliberately indifferent in not providing him with one. Accordingly, the Court finds that she is entitled to summary judgment.

CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the Defendants' motion for summary judgment (Doc. 151). Summary judgment is **GRANTED** as to all claims except Plaintiff's ADA and RA claims against IDOC for failing to provide him with adequate gloves to use with his wheelchair. Summary judgment is **DENIED** as to that claim, which remains pending. At the close of the case, the Clerk is directed to enter judgment for Defendants Gaetz, Keane, Brown, Edwards, Spiller, and Wilson and against Plaintiff Marc Norfleet. This case remains set for trial on Monday, September 18, 2017.


       **IT IS SO ORDERED**.

       DATED: September 8, 2017

                                            *s/ Michael J. Reagan*
                                            MICHAEL J. REAGAN
                                            **Chief Judge**
                                            **United States District Court**

Page **29** of **29**